IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GAVIN BOLOSAN, #A1055979, | ) Civ. No. 19-00073 JMS-RLP<br>) |
| Plaintiff, | ) ORDER DISMISSING COMPLAINT<br>) |
| vs. | )<br>) |
| FRANCIS SEQUEIRA, THOMAS<br>EVANS, DR. CAROLINE MEE, | )<br>)<br>) |
| Defendants. | )<br>) |

## ORDER DISMISSING COMPLAINT

Before the court is pro se Plaintiff Gavin Bolosan's prisoner civil rights Complaint brought pursuant to 42 U.S.C. § 1983. Bolosan alleges Oahu Community Correctional Center (OCCC) Warden Francis Sequeira, OCCC Chief of Security (COS) Thomas Evans, and Department of Public Safety (DPS) Medical Director Dr. Caroline Mee (collectively, "Defendants") violated the Eighth and Fourteenth Amendments relating to incidents that allegedly occurred within the past year when he was incarcerated at OCCC.[1]

Bolosan's claims are so vague and conclusory that he fails to state any colorable claim for relief. The Complaint is DISMISSED with leave granted to

---

[1] Bolosan is now incarcerated at the Halawa Correctional Facility (HCF).

amend pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), subject to the limitations discussed below.

## I. **STATUTORY SCREENING**

The court must conduct a pre-Answer screening of all prisoner pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation"

falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**

On December 3, 2018, Bolosan filed a previous federal civil rights complaint, *Bolosan v. Tanigawa*, *et al.*, Civ. No. 18-00473 JMS-RLP (D. Haw.) (*Bolosan I*), to which he refers in the present action. In that action, Bolosan claimed that OCCC nurse Courtney Tanigawa failed to review his institutional medical records when she examined him for reentry on or about March 31, 2018. He alleged these records contained a medical memorandum prohibiting his assignment to a top bunk. When Bolosan arrived at the housing unit, he told Sgt. Fonseca that he had a medical memorandum that prohibited his assignment to a top bunk, but he alleges that Fonseca nonetheless forced him to accept a top bunk. Bolosan fell from the ladder to the top bunk that evening and injured his back.

On January 31, 2019, the court directed service of the Complaint in *Bolosan I*, limited to Bolosan's claims that Tanigawa and Fonseca acted with deliberate indifference to his medical needs in their individual capacities; claims against DPS and Tanigawa and Fonseca in their official capacities were dismissed. *Bolosan I*, Civ. No. 18-00473 JMS-RLP, Order, ECF No. 4, PageID #22.

Bolosan filed the present Complaint on February 11, 2019. He alleges that Warden Sequiera "allowed his staff to assess the situation with no Moral aptitude leading to the [incompetence] of them to allow the breach of care." Compl., ECF No. 1, PageID #2. In Count I, Bolosan does not name Sequeira, but he appears to refer to Sequeira when he states that OCCC is "under *his* supervision," and that Bolosan holds "*him* accountable for my falling off the bed . . . an [sic] letting *his* sargents [sic] get away with threatening to lock [me] up if I do not move." *Id.*, PageID #5 (emphases added). Bolosan also complains that his mattress was hard, the cell was small, and there were long lockdowns, which made the living conditions at OCCC "cruel." *Id.*

In Count II, Bolosan says "chief of security" (Evans), "over sees [sic] all of the staff that is employed at the OCCC facility," and he alleges that Evans is therefore responsible for Bolosan's assault by two dozen inmates from two different gangs while Bolosan was housed in Annex 1. *Id.*, PageID #6. Bolosan

4

says these inmates "came for me while I was sleeping in my bed," because Evans failed to supervise his staff, who "let situations get out [of] control." *Id.* He claims Evans is liable for this alleged "retaliation as well [as] medical care." *Id.*

In Count III, Bolosan alleges that Dr. Mee is liable for the pain he has endured for almost a year, because she oversees all DPS medical staff and "the SURP team."[2] *Id.*, PageID #7. He says that she has breached her duty of care because "she is forcing me to plead guilty to my new charges [in an unidentified criminal proceeding] in order for me to get medical attention." *Id.*

Bolosan requests a hearing and appointment of counsel "so I have some understanding to what is going on with my case." *Id.*, PageID #8 (Request for Relief). He seeks compensation for his mental, emotional, and physical injuries. *Id.*

### III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also allege

---

[2] Bolosan does not explain this acronym, but it apparently refers to a surgery review and referral panel within DPS.

5

that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A. Eleventh Amendment Immunity

Bolosan names Sequeira, Evans, and Dr. Mee in their individual and official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Bolosan seeks only damages and does not allege an ongoing violation of state law. Moreover, Bolosan alleges claims regarding incidents that allegedly occurred at OCCC, but he is now incarcerated at HCF. "When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his [injunctive] claim is moot." *Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991)). That is, an inmate's claims for prospective injunctive and declaratory relief are moot when he "no longer is subjected to [the allegedly unconstitutional] policies." *Johnson*, 948 F.2d at 519. Bolosan's claims against Defendants Sequeira, Evans, and Dr. Mee in their official capacities and any claims for injunctive relief are DISMISSED with prejudice.

**B.     Rule 8**

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

7

To state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it requires factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "All that is required is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)).

1. *Vague and Conclusory Claims*

In Count I, Bolosan vaguely alleges that "he" is liable for Bolosan's fall from his bunk on March 31, because "his sargents" threatened to lock Bolosan up if he would "not move." Compl., ECF No. 1, PageID #5. Bolosan does not explain who "he" is. Even if the court assumes that "he" refers to Warden Sequeira, this claim makes no literal sense without a careful reading of the Complaint in *Bolosan I*. The court will not attempt to discern meaning from Bolosan's allegations by scouring the record in *Bolosan I*, however, nor will it require Defendants here, who are not named in *Bolosan I*, to do so. And Bolosan's vague claims regarding a hard mattress, 20-hour cell lockdowns, and small cell size at OCCC are insufficient, without more details, to state a cognizable claim for inhumane conditions of confinement, that is, the denial of

8

"the minimal civilized measure of life's necessities." *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Count I fails to state a claim and is DISMISSED with leave to amend.

In Count II, Bolosan alleges that he was assaulted by inmate gang members while he slept in Annex 1. Although he concludes that COS Evans is responsible for this attack, Bolosan provides no facts detailing Evans's connection to this allegation that allow the court to plausibly infer that Evans acted with deliberate indifference to Bolosan's safety. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (stating that, to prevail under the Eighth or Fourteenth Amendments for failure to protect claims, a "plaintiff must show that the prison officials acted with 'deliberate indifference'") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Count II is DISMISSED with leave to amend.

In Count III, Bolosan alleges that he has been in pain for nearly a year, but he provides no other facts that connect this claim to Dr. Mee. Without reference to *Bolosan I*, neither Defendants nor the court can understand what happened to Bolosan, what care he received or was denied, or what Dr. Mee did or failed to do to cause his injury and pain. That is, Bolosan fails to assert sufficient facts to allow Dr. Mee to understand his claims against her, or to show that Dr. Mee acted with deliberate indifference to his serious medical needs. *See Farmer v. Brennan*,

9

511 U.S. 825, 837 (1994) (discussing the standard for deliberate indifference to a convicted inmate's medical needs under the Eighth Amendment); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (discussing standard for deliberate indifference to pretrial detainee's medical needs under the Fourteenth Amendment). Count III is DISMISSED with leave granted to amend.

The court will not guess what facts underpin Bolosan's claims against any Defendant, nor will it scour the record in *Bolosan I* to make sense of the Complaint. If Bolosan elects to file an amended complaint, he must allege in separate claims, what occurred, when the event at issue occurred, how that event violated his rights, that is, how he was injured, and what each individual named Defendant did or failed to do that connects them to that specifically alleged violation of Bolosan's rights. As written, the Complaint does not set forth sufficient facts to alert Defendants to what Bolosan's claims against them are, or assert a right to relief against them that is more than speculative.

### 2. *Supervisor Liability*

Bolosan explicitly alleges claims against Warden Sequeira, COS Evans, and DPS Medical Director Dr. Mee based solely on their supervisory positions. *See* Compl., ECF No. 1, PageID #1-2 (listing Defendants and alleging their supervisory positions). To state a claim against a supervisor under § 1983, a

plaintiff must establish that each "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotation marks and citations omitted) (alterations in original). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

To state a supervisor liability claim, a plaintiff must show that the supervisor personally participated in the alleged deprivation, knew of the violation

11

and failed to act to prevent it, or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations and quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Bolosan alleges no facts showing that Sequeira participated in the decision to assign him to a top bunk despite available medical information forbidding such an assignment. Nothing indicates that Sequeira knew about the issue and failed to intervene. Nor does Bolosan allege that Sequeira instituted a policy that was the moving force behind his allegedly medically unsafe bunk assignment. Bolosan therefore fails to state a colorable claim for relief against Sequeira in his individual capacity as OCCC Warden.

Bolosan also fails to allege facts showing that Evans knew that (1) Bolosan felt unsafe in Annex 1; (2) feared an attack by gang members; (3) and despite such knowledge, (4) authorized Bolosan's housing in Annex I with gang members likely to assault Bolosan. Bolosan does not even allege that Evans played a part in the decision to house him in Annex 1. Nor does Bolosan allege that Evans authorized a policy or promulgated a procedure that allowed Bolosan to be

assigned to an unsafe housing unit. Bolosan fails to state a colorable claim for relief against COS Evans in his individual, supervisory capacity.

Finally, Bolosan fails to allege facts showing that Dr. Mee knew that he was in pain for the past year and refused to authorize him medical care. Moreover, although Bolosan claims that Dr. Mee is forcing him to plead guilty to an unidentified crime *before* she will provide him medical attention, he also states that, "I've done an MRI for Dr. Fraun and he suggested surgery on back and . . . Dr. Pedri . . . [concurs]." *See* Compl., ECF No. 1, PageID #7. This shows that Bolosan *has* received treatment for his back injury from at least two physicians.

To the extent Bolosan blames Dr. Mee for his continuing pain because the medical review panel has not approved his surgery yet, he alleges no facts regarding when, why, and by whom he was referred for surgery, when the panel received that referral, whether the panel has acted on the referral, and *if* he was denied surgery, the stated reasons for that denial. Dr. Mee's position as DPS Medical Director, without more information, does not make her liable for Bolosan's back injury, or the alleged denial of medical care since the injury, or the possible denial of surgery by the panel. Finally, Bolosan points to no DPS policy that Dr. Mee promulgated that denied him medical care or medically necessary

surgery. Bolosan fails to state a plausible claim against Dr. Mee in her individual capacity.

Because Bolosan fails to allege sufficient facts to state a colorable claim for relief against Defendants Sequeira, Evans, and Dr. Mee, the Complaint is DISMISSED with leave granted to amend.

## C.    **Improper Joinder of Claims and Parties**

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join as many claims as he has against an opposing party in one action. Fed. R. Civ. P. 18(a). But parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Thus, claims against different parties may be joined together in one complaint only if the claims have similar factual backgrounds and have common issues of law or fact. *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997).

Bolosan's claims against Warden Sequeira regarding Bolosan's fall from his bunk in Module 2 (Count I), and against Dr. Mee regarding the alleged denial of medical care (Count III), do not appear to be connected with his allegations

against COS Evans that he was assaulted by gang members in Annex 1 (Count II). It is not even clear whether Bolosan's claims in Count I are connected to his claims in Count III, and if these claims refer to and are connected with the allegations in *Bolosan I*. In any case, Bolosan's claims against Sequeira, Evans, and Dr. Mee appear to be improperly joined in the present action. If Bolosan chooses to amend his claims, he should be mindful of this apparent failure to comply with the Federal Rules of Civil Procedure. Claims that are unconnected and Defendants that are improperly joined in any amended complaint will be dismissed.

## IV. **LEAVE TO AMEND**

The Complaint is DISMISSED with leave granted to amend. Bolosan may file an amended complaint on or before May 3, 2019, that attempts to cure the deficiencies in his claims. Bolosan may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint. Claims that do not properly relate to his original pleading are subject to dismissal.

Bolosan must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires an amended complaint to be complete in itself without reference to any prior

15

pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012). If Bolosan fails to timely file an amended complaint that cures the deficiencies in his claims, this action may be dismissed and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).[3]

## V. CONCLUSION

(1) The Complaint is DISMISSED for failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(2) Bolosan may file an amended pleading that cures the deficiencies in his claims on or before May 3, 2019.

---

[3] 28 U.S.C. § 1915 (g) bars a civil action by a prisoner proceeding in forma pauperis:

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

16

(3) The Clerk is directed to send Bolosan a blank prisoner civil rights complaint form so that he can comply with the directions in this Order if he chooses to amend his complaint.

(4) If Bolosan fails to timely amend his pleadings or is unable to cure the deficiencies in his claims this suit may be AUTOMATICALLY DISMISSED without further notice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 4, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Bolosan v. Sequeira, et al.*, Civ. No. 19 00073 JMS RLP; Scrng '19 Bolosan19 73 jms (dsm C lv amd R8, 18, 20, spvr liab)